UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 10-20671-cr-UNGARO

UNITED STATES OF AMERICA

vs.

PRIME AIRPORT SERVICES, INC.,

      Defendant.
_____/

## PLEA AGREEMENT

The United States of America and PRIME AIRPORT SERVICES, INC, (hereinafter referred to as PRIME AIRPORT SERVICES or the "defendant") enter into the following agreement:

**PROFFER OF FACT**

1. The defendant and the United States agree that the government could prove the following facts beyond a reasonable doubt:

   a. PRIME AIRPORT SERVICES is a ground cargo handler at Miami International Airport with a principal place of business in Miami, Florida.

   b. The Plant Protection Act, 7 U.S.C. §7701 – 7786 (West Supp. 2009), governs the introduction of plant pests into the United States and their movement in interstate commerce. A plant pest is any of a long list of organisms that could directly or indirectly harm plants or plant products. See 7 U.S.C. § 7702(14); 7 C.F.R. § 330.100.

   c. On May 7, 2006, a commercial air cargo carrier arrived at Miami International Airport from Bogota, Colombia with 149 boxes of fresh, cut hydrangeas, weighing a

1

total of 1,341 kilograms, for importation into the United States.  On May 7, 2006, the air carrier delivered the hydrangeas to the defendant, who took them into its custody and care.

d. 7 U.S.C. § 7713(c) states that no person shall move from a port of entry any imported plant, plant product, or plant pest unless the plant, plant product, or plant pest is inspected and authorized for entry into the United States.

e. Additionally, 7 C.F.R. § 319.74-2(a) states that all cut flowers imported into the United States must be made available to an inspector for examination at the port of first arrival and must remain at the port of first arrival until released, or authorized by further movement, by an inspector.

f. On May 7, 2006, the defendant presented the 149 boxes of hydrangeas to United States Customs and Border Protection for agricultural inspection.  CBP inspected the hydrangeas and discovered a known plant pest within the order *coleoptera* within twenty-two of the 149 boxes of flowers.  In response to the discovery of this pest, CBP issued an Emergency Action Notice for the twenty-two boxes of hydrangeas containing the pest.  The Emergency Action Notice required the defendant to either fumigate these boxes of hydrangeas with methyl bromide under CBP supervision, re-export them to their point of origin under CBP supervision, or destroy them under CBP supervision.  While ordering these measures for the hydrangeas that were pest-laden, CBP authorized the release of the other 127 boxes of hydrangeas, those that it found to be pest-free.

g. The defendant received verbal notice of the agricultural hold on the twenty-two boxes of pest-laden hydrangeas.  The defendant received a copy of the air waybill for the

hydrangea shipment with a CBP stamp reflecting the hold on the twenty-two boxes of hydrangeas with the plant pest. The defendant also received a paper copy of the Emergency Action Notice.

h. On May 8, 2006, at approximately 1:01 a.m., the defendant released all 149 boxes of the hydrangeas, including the twenty-two boxes subject to the agricultural hold, to the consignee's trucking company. Prior to their release to the trucking company, the defendant did not fumigate the twenty-two boxes of hydrangeas with *coleoptera*. The consignee later received and sold the hydrangeas within the United States.

i. On December 3, 2006, a commercial air cargo carrier landed from Lima, Peru with 120 boxes of fresh asparagus weighing a total of 685 kilograms for transshipment to South Korea. The asparagus missed its connecting flight. After this missed connection, the carrier delivered the 685 kilograms of asparagus to the defendant's custody and care.

j. 7 C.F.R. § 352.10(b)(1) states that "[t]he unloading, landing, ... transshipment ... and other movement or possession within the United States of prohibited or restricted products and articles under this part shall be subject to such safeguards as may be prescribed in the permits and this part and any others which, in the opinion of the inspector, are necessary ... to prevent plant pest dissemination.

k. Peruvian asparagus is a known carrier of plant pests and must receive fumigation upon its arrival or importation into the United States. Once the asparagus missed its connecting flight, the in-transit permit for this asparagus required the defendant to fumigate the asparagus. Moreover, the in-transit permit required the defendant to receive CBP approval and supervision for any transloading, transferring, or storing of

3

the asparagus. The in-transit permit further required that the boxes be encased in insect-proof mesh and covered with a barrier to prevent pest escape.

1. On December 16, 2006, CBP found the boxes of asparagus next to a dumpster on the runway. Neither the dumpster nor the runway in the vicinity of the dumpster were approved disposal sites for international garbage. The insect-proof mesh surrounding the boxes of asparagus did not cover the boxes, and the barrier to prevent pest escape was broken. Upon discovery of the asparagus on the open runway, CBP ordered the defendant to safeguard it inside its refrigerated warehouse.

**TERMS OF THE AGREEMENT**

2. The defendant agrees to plead guilty to Counts One and Two of the two-count Information, which counts charge the defendant with knowingly importing, entering, or moving any plant, plant product, plant pest, noxious weed, or article, for distribution or sale, in violation of the Plant Protection Act and the regulations promulgated pursuant to the Plant Protection Act, in violation of Title 7, United States Code, Sections 7734(a)(1)(B).

3. The defendant is aware that the sentence will be imposed by the court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and

understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 2 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that the court may impose a total fine of the not more than $1,000,000, or not more than twice the gross gain or loss, whichever is greater. The United States and the defendant agree that the parties shall jointly recommend a fine of $1,000,000 and further that the defendant shall make the payment within twenty-four hours of the Court's sentencing order with a payment made payable to Clerk, United States Courts, and forwarded to: U.S. Clerk's Office, 400 North Miami Avenue, Room 8NO9, Miami, Florida 33128.

5. The United States and the defendant agree and acknowledge that the Court may impose a sentence of probation and that, if the Court elects to do so, that the term of probation shall be not less than one year and up to a maximum of five years. The parties agree and acknowledge that, in the past three years, the defendant has striven to improve its compliance with the Plant Protection Act and its working relationship with CBP. The parties agree and acknowledge that the defendant has committed no significant violations of the Plant Protection Act during this time. In light of the defendant's improved performance, and in consideration of the factors articulated in Title 18, United States Code, Sections 3553 and 3562, and Section

8D1.1 of the United States Sentencing Commission Guidelines Manual, the parties shall jointly recommend that the defendant receive no probation.

6. The defendant further understands and acknowledges that, in addition to any fine imposed under paragraph 4 of this agreement, a special assessment in the amount of $800 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

7. The defendant understands and acknowledges that, prior to the date of the defendant's change of plea, the defendant shall provide to the United States a resolution of the board of the defendant with a duly affixed seal authorizing and empowering Thomas Neumann, Secretary of the Board of the defendant, to act on behalf of the defendant and to legally bind the defendant.

8. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in paragraphs 4 and 5 of this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

9. The United States and the defendant agree that, although not binding on the probation office or the court, they will jointly recommend that the court impose a sentence within the advisory sentencing guideline range produced by application of the Sentencing Guidelines. Although not binding on the probation office or the court, the United States and the defendant further agree that, except as otherwise expressly contemplated in this Plea Agreement, they will

jointly recommend that the court neither depart upward nor depart downward under the Sentencing Guidelines when determining the advisory sentencing guideline range in this case.

10. The United States agrees that it will recommend at sentencing that the court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. The United States further agrees to recommend that the defendant be sentenced at the low end of the guideline range, as that range is determined by the court. The United States, however, will not be required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

11. The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant

hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or a variance from the guideline range that the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that it has discussed the appeal waiver set forth in this agreement with its attorney. The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the defendant's waiver of its right to appeal the sentence to be imposed in this case was knowing and voluntary.

12. The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw its plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

8

13. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings unless contained in a letter from the United States Attorney's Office executed by all parties and counsel prior to the change of plea.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 10/22/10          By: _____
                              JAIME A. RAICH
                              Assistant United States Attorney

Date: 10/22/10          By: _____
                              REBEKAH J. POSTON
                              Squire, Sanders & Dempsey L.L.P.
                              Attorney for DEFENDANT

Date: 10/22/10          By: _____
                              THOMAS NEUMANN
                              Authorized Representative of
                              PRIME AIRPORT SERVICES, INC.
                              DEFENDANT

omnibus.ins

RESOLUTION OF THE BOARD OF
PRIME AIRPORT SERVICES, INC.

The undersigned, being the sole board director of PRIME AIRPORT SERVICES, INC. (the "Company"), a Florida corporation hereby adopts the following resolution:

RESOLVED, that, the Company agrees to enter into a Plea Agreement between the United States of America and the Company, in substantially the form attached hereto;

RESOLVED, that Mr. Thomas Neumann, is authorized to execute the Plea Agreement on behalf of the Company; and

FURTHER RESOLVED, that Mr. Thomas Neumann is authorized to appear in the U.S. District Court to represent the Company, and to enter a guilty plea on behalf of the Company;

IN WITNESS WHEREOF, the undersigned has executed this Resolution effective as of October 21, 2010.

By: *Eduardo Vial*
Name:   Eduardo Vial
Title:   Attorney-in-Fact

*****

CERTIFICATION

I, Thomas Neumann, Secretary of the Board of the Company certify that the foregoing is a full, true, and correct copy of a Resolution duly adopted by the Board of the Company, and that said Resolution has not been rescinded or revoked.

By: *Thomas Neumann R*
Name:   Thomas Neumann
Title:   Secretary